USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Yovanny Dominguez,

                Plaintiff,

      –v–

New York Equestrian Center, LTD,

                Defendant.

18-cv-9799 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Yovanny Dominguez brings this action against Defendant New York Equestrian Center, Ltd. under Title III of the Americans with Disabilities Act (ADA) and New York State and City law. The Defendant has failed to appear in this proceeding. Dominguez therefore moves for default judgment. For the reasons that follow, Plaintiff's motion is GRANTED.

## I.    BACKGROUND

    The following facts are taken from the complaint and, for purposes of this motion for default judgment, are assumed to be true. Fed. R. Civ. P. 8(b)(6); *see Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) (defaulting defendant is deemed to have admitted all well-pleaded allegations in the complaint regarding liability).

    Plaintiff Dominguez, a resident of New York, "is a blind, visually-impaired handicapped person" and requires screen-reading software to read online content. Complaint, Dkt. No. 1, ¶¶ 11–12; *see also* Compl. ¶ 27 ("Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software."). Defendant is an equestrian center located in New York. *Id.* ¶ 14. It operates its primary physical location in West Hempstead, New York. *Id.* ¶ 23. And it operates a website, which contains the Equestrian

Center's location and hours, provides users the ability to make reservations for classes and the like, and purchase items from a gift shop, among other things. *See id.* ¶¶ 24–25.

In 2018, Plaintiff accessed Defendant's website. *Id.* ¶ 28. However, Plaintiff "encountered multiple access barriers that denied Plaintiff" full access to the website. *Id.* These barriers included (1) lack of alternative text, (2) empty links containing no text, (3) redundant links, and (4) linked images missing alternative text. *Id.*

Dominguez thus brought suit against the New York Equestrian Center, asserting claims under the Americans with Disabilities Act, New York State law, and New York City law. *Id.* ¶¶ 50–97. Plaintiff also seeks to certify "a nationwide class . . . [of] all legally blind individuals in the United States who have attempted to access Defendant's Website," a New York State subclass, and a New York City subclass. *Id.* ¶¶ 42–49. And Plaintiff seeks compensatory damages, injunctive relief, and declaratory relief. *See id.* ¶¶ 50–100.

Dominguez filed her complaint on October 24, 2018. Dkt. No. 1. Defendant was served with the summons and complaint on October 31, 2018. Dkt. No. 7. However, Defendant has not filed an answer or otherwise appeared in this litigation. The Clerk of Court entered a certificate of default on March 22, 2019. In August 2019, Plaintiff served her moving papers on Defendant. Dkt. No. 27.

## II.   LEGAL STANDRD

Once the Clerk of Court enters a defendant's default, the defendant is deemed to have admitted well-pleaded allegations about liability in the complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In other words, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-cv-3168, 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009).

A party's default, moreover, "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Therefore, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at an inquest hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

### III. DISCUSSION

As noted, Dominguez brings claims under the ADA, state law, and city law. The Court discusses each claim in turn.

#### A. Americans with Disabilities Act

Section 302(a) of Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Thus, to establish a Title III violation, a plaintiff must demonstrate "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own,

lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Here, Dominguez's complaint states a Title III violation. *First*, Dominguez—a legally blind person who requires screen-reading software to access the internet— is disabled within the meaning of the ADA. The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Dominguez is disabled because she is substantially limited in the major "life activity" of seeing. 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . blindness substantially limit[ing] seeing.").

*Second*, Defendant's website is a place of accommodation. "The Second Circuit has not [directly] addressed whether the ADA's prohibition on discrimination in places of 'public accommodation' extends to 'places' on the Internet or to the online services of real-world public accommodations." *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017). But in an analogous case, *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), the Second Circuit held that Title III prohibited an insurer from discriminating against a disabled customer in the sale of its insurance policies, and thus the insurer had violated the ADA—even though the plaintiff was not challenging the defendant's physical accessibility. *See id.* at 31. The *Pallozzi* court rejected the argument that "Congress intended the statute to ensure [only] that the disabled have physical access to the facilities of insurance providers." *Id.* at 32. Rather, "Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods [and] services . . . of any place of public accommodation'

suggests . . . that the statute was meant to guarantee them more than mere physical access." *Id.* Following the Second Circuit's decision in *Pallozzi*, many courts in this circuit have held that websites qualify as places of public accommodation under the ADA. *See Thorne v. Formula 1 Motorsports, Inc.,* No. 19-cv-1077 (JPO), 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019); *Del-Orden*, 2017 WL 6547902, at *5 ("[T]he four district courts in this Circuit to address the issue have each held, drawing on [Pallozzi], that Title III extends to online fora offering goods and services.") (citing cases). This Court agrees.[1]

*Third*, Plaintiff has demonstrated that Defendant's website discriminates against her within the meaning of the ADA. Specifically, Dominguez alleges that Defendant's website fails to provide alternative text, contains empty links containing no text, and contains redundant links. *See* Compl. ¶ 28. These well-pleaded allegations, taken as true, plausibly show that Defendant discriminated against Plaintiff by denying her a full and equal opportunity to use its website. *See, e.g., Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018).

In sum, the Court concludes that Plaintiff's complaint states a violation of Title III of the ADA.

### B. New York State Human Rights Law

Plaintiff also brings state-law claims. The New York State Human Rights Law is composed of the New York Executive Law §§ 292 *et seq.* (which provides the substance of the law) and the New York Civil Rights Law §§ 40 et seq. (which provides for penalties). "A claim

---

[1] Moreover, the First and Seventh Circuits have held that Title III applies to businesses that do not have physical locations, such as web-based businesses. *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (holding that the "core meaning" of Title III "is that the owner or operator of a store, hotel, restaurant, . . . Web site, or other facility" open to the public cannot discriminate against disabled persons); *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 19 (1st Cir. 1994) (holding that "public accommodation" includes "providers of services which do not require a person to physically enter an actual physical structure," like "travel services [that] conduct business by telephone"). These persuasive cases further support the Court's conclusion.

of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.3 (2d Cir. 2006) (citation omitted).  Thus, the Court also concludes that Plaintiff has stated a violation of state law.  *Accord Thorne*, 2019 WL 6916098, at *3.

### C. New York City Human Rights Law

Plaintiff finally brings city-law claims.  The New York City Human Rights Law, though textually similar to both the ADA and the New York State Human Rights Law, is given "an independent liberal construction analysis in all circumstances." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (N.Y. App. Div. 1st Dep't 2009).  But the City law is always at least as protective of plaintiffs as its state and federal counterparts—"federal and state civil rights laws [provide] a floor below which the City's Human Rights law cannot fall." *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 400 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  Given the Court's conclusion that Plaintiff has stated a claim under the ADA and under state law, she has also stated a claim under city law.

### D. Remedies

Plaintiff first seeks an injunction requiring Defendant "to take all the steps necessary to make its Website into full compliance with the . . . ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals."  Compl. at 25.  The ADA provides a private right of action for injunctive relief.  *See* 42 U.S.C. § 12188(a).  Accordingly, Plaintiff's request for injunctive relief is granted.  Defendant is ordered to take all necessary steps to bring its website into compliance with the ADA and its implementing regulations.

Plaintiff also seeks compensatory damages, as provided by state and city law.  *See Kreisler v. Second Ave. Diner Corp.*, No. 10-cv-7592, 2012 WL 3961304, at *14 (S.D.N.Y. Sept. 11, 2012).  "Even when a default judgment is warranted based on a party's failure to defend," the plaintiff still has the burden to prove damages with a "reasonable certainty."  *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  Here, the Plaintiff has failed to "establish any particular damage" other than the bare fact of discrimination.  *Kreisler*, 2012 WL 3961304, at *14.  In such cases, the New York City Human Rights Commission has deemed awards of up to $1,000 to be sufficient to compensate a complainant for the injury that "a decent and reasonable individual would suffer when faced with such ignorant behavior."  *Id.* (quoting *Okoumou v. Cnty. Recovery Corp.*, 2009 WL 6910263, at *2 (N.Y.C. Com. Hum. Rts. June 1, 2009)); *see Gardner v. I.J.K. Serv. Inc.*, 2009 WL 6929883 (N.Y.C. Com. Hum. Rts. Feb. 19, 2009)).

Plaintiff requests $500 in damages.  Dkt. No. 25 at 1.  "Although Plaintiff has not established any particular damages other than that he feels discriminated against because he is unable to access the [website], the Court finds that such harm warrants compensation."  *Kreisler*, 2012 WL 3961304, at *15.  For the same reason, the Court awards $500 in damages.

As for fees and costs, both the ADA and city law allow a prevailing party in an action to recover reasonable attorneys' fees, including litigation expenses and costs. See 42 U.S.C. § 12205; N.Y.C. Admin. Code § 8-502(f).  Plaintiff's counsel seeks recovery of fees and costs, but does not include documentation like billing records.  Instead, counsel states that "[u]pon demand, Plaintiff will submit a detailed fee petition."  Dkt. No. 25-1 at 3.  Plaintiff is thus ordered to file a motion for fees and costs, with proper documentation, within thirty days of the date of entry of this Order.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for entry of default judgment is GRANTED. Defendant shall take all necessary steps to bring its website into compliance with the ADA within sixty days of the date of entry of this Order. Plaintiff is awarded $500 in compensatory damages. Plaintiff shall file a motion for attorney's fees and costs within thirty days of the date of entry of this order.

Plaintiff shall serve a copy of this Opinion and Order on the Defendant by October 15, 2020, and file an affidavit of service reflecting she has done so on the public docket.

The Clerk of Court is respectfully directed to close the motion at Docket Number 22.

SO ORDERED.

Dated: September 28, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge